# CHARLESTON.

## BAKER *v.* OIL TRACT COMPANY.

### March 2, 1874.

<span style="margin">1874.
January Term.</span>

I. S., conveyed a tract of land in Wirt county to W., and F., trustees for the R. O. T. Co. The R. O. T. Co., is a foreign corporation and is indebted to B. And B., to collect his debt, sued out, in chancery, a foreign attachment against the R. O. T. Co., as a non-resident of this State and caused the same to be levied on said tract of land and some personal property. The R. O. T. Co., before the cause was heard, appeared in Court and filed its answer to B's., bill, contesting his alleged debt. On the hearing of the cause, on the bill, answer, depositions, &c., the circuit court rendered a personal decree against the R. O. T. Co., for the amount of B's., debt or claim and the costs of suit, and also decreed that so much of said land and personal property on which the attachment was levied, as should be necessary to pay the said debt and costs of suit, be sold, for cash, for that purpose, &c.— HELD:

1. That, as the R. O. T. Co. appeared and answered, it was not error for the circuit court to render a decree against it for the amount of B's. debt and costs of suit.

2. That it was error in the circuit court to decree the sale of the land without W. & F., the trustees, being made parties to the cause.

3. If the decree of sale had been otherwise correct, it was not error to decree the sale to be made for cash.

II. When a decree in a cause in chancery is made directing the sale of real and personal property by a special commissioner, to pay a debt, for cash, it is generally proper, that the decree should require bond with good personal security to be given before the court, or given and filed with the clerk of the court, before the sale shall be made, in a penalty fixed in the decree, and conditioned according to law.

III. In a suit or proceeding by foreign attachment in equity, to collect the price of two oil tanks, it is competent for the defendant to plead and rely on a breach of warranty, as to the quality of the material of the oil tanks in reduction or abatement of the price, and when such defence is plead and relied on in the answer, it is unnecessary to file a cross-bill for that purpose.

IV. It is not error in a circuit court to refuse to allow a defendant to file a cross-bill in a chancery cause, praying a suspension of further proceedings in the original suit, until an account prayed in the cross-bill can be taken, when the filing of the cross-bill has been unreasonably delayed, and especially where the complainant in the cross-bill fails to state any reason for such delay.

An appeal by the Rathbone Oil Tract Company from a decree rendered on the 27th day of November, 1871, by the circuit court of Wirt county, in a suit in chancery therein pending, wherein J. W. Baker was complainant and said Oil Tract Company and S. P. Wells, were respondents,

The facts in the suit sufficiently appear in the opinion of the Court.

The Hon. George Loomis, judge of said circuit court, presided at the hearing below.

*John A. Hutchinson, Jr.* for the appellant.

*Okey Johnson* and *Walter S. Sands,* for the appellee.

HAYMOND, President:

This is a case of an attachment in equity. Complainant proceeded against the Rathbone Oil Tract Company, as a non-resident of this State, and its agent Wells, alleging that the Company had, at the commencement of the proceeding, estate in the county of Wirt, in this State. The proceeding was commenced in February, 1867, the summons on which the attachment was endorsed was made returnable to the first Monday in March, after the date thereof. The attachment was levied, as appears by the return of the Sheriff, on all the right, title and interest of the Rathbone Oil Tract Company, in and to the tract of land situated on the Little Kanawha river, Burning Spring Run &c., in Wirt county, and all the partnership property, in said county, formerly owned by Rathbone and

1874.
January Term.

Baker
v.
Oil Tract Co.

Camden, and the individual property of J. V. and J. C. Rathbone, which was conveyed to Wm. Whiteright, Jr., and J. P. Girard Foster, in trust for the said defendant Rathbone Oil Tract Company by William P. Stratton, by deed dated the 9th day of November, 1861, and recorded in deed book No. 5, 279 &c., of the records of Wirt county, to which reference is made, for a better description of the land. This levy was made on the 15th day of February, 1867. Some oil tanks on said land were also levied upon. The complainant filed his bill in the cause, at March rules 1867. The complainant, in his bill, alleges, that the Rathbone Oil Tract Company is a foreign corporation created under the laws of New York, and that said Company through its agent, S. P. Wells, purchased from him on the —— day of October, 1866, two oil tanks, of the capacity of twelve hundred barrels each, amounting to twenty-four hundred barrels, at the price of 75 cents per barrel, amounting to the sum of $1,800; that complainant, for the sum aforesaid, was to set up the tanks within a reasonable time, when notified by the Company; that the purchase money was to be paid in thirty days; that he was always ready and willing to set up said tanks at any time, but was not notified of the Company's readiness to have the same set up; that said Company also purchased from him some other articles, amounting in the aggregate to $42.05; that the Company is justly indebted to complainant in the sum of $1,842.05, with interest on $1,800, part thereof from the 31st day of October, 1868, till paid, and on $42.05 residue thereof from the 31st day of December, 1866, subject to a credit of $1,000.00 paid by the Company's said agent (Wells) the 16th February, 1867, after the commencement of this suit. The bill also alleges that the attachment issued in the cause was levied on a tract of land at Burning Springs, in said Wirt county, conveyed by William P. Stratton to Wm. Whiteright and J. P. Girard Foster, trustees for said Rathbone Oil Tract Company. The summons in the cause was executed on Wells, and on the

30th day of May, 1868, the Company appeared in court, and filed its answer to the bill, to which complainant filed a general replication. On the 27th day of November, 1871, the Company appeared in court, and asked. leave to file a cross bill in the suit, but the court refused to grant the leave. On the 27th day of November, 1867, the same day that leave to file a cross-bill was refused, the cause was regularly heard on bill, answer of the Company, general replication thereto, proofs in the cause, attachment levied &c. And the circuit court decreed that complainant recover of the defendant Rathbone Oil Tract Company the sum of $1,842.05, with interest thereon from the 16th day of February, 1867, subject to a credit of $1,000.00 paid on said 16th day of February, 1867, and the further sum of $150.00, paid February 8, 1867, together with the costs of suit. The court also decreed, in the same decree, that unless the said Rathbone Oil Tract Company, or some person for it, within twenty days from the date of the decree, pay the amount decreed to be paid, that W. S. Sands, who was appointed a special commissioner for the purpose, proceed to sell so much of the property attached in the cause as shall be sufficient to pay complainant's debt interest and costs. It appears that the papers of the cause had been submitted to the court for hearing some time before the Company offered to file its cross-bill, and that the court was then ready to pronounce its decree. From this decree the Rathbone Oil Tract Company have appealed.

The *first* error assigned and relied upon before us is "that the court below erred in decreeing the sale of the lands attached, because the bill shows that the trustees, holding the legal title to the lands on which the attachment was levied, were not made parties to the suit." The bill does show on its face that the lands on which the attachment was levied were conveyed by William P. Stratton to Wm. Whiteright, and J. P. Girard Foster, trustees for said Company. The bill professes

58

to file a copy of the deed from Stratton to Whiteright and J. P. Girard Foster, trustees for said Company as an exhibit, but the copy no where appears in the record. From the allegations of the bill and the returns of the Sheriff made upon the attachment in relation to the land, I think the fair conclusion is that the land was conveyed by Stratton to Whiteright and Foster, in trust for the said Company, or for its use. This being so, the legal title to the land, so far as is disclosed by the record, is still vested in the trustees. In cases of trust, Judge Story in his Equity Pleadings, sections 207 and 209, says: "The general rule in cases of this sort is, that in suits respecting the trust property, brought either by or against the trustees. the *cestuis que trust* (or beneficiaries,) as well as the trustees, are necessary parties. And where the suit is by or against the *cestuis que trust* (or beneficiaries,) the trustees, also, are necessary parties. The trustees have the legal interest, and therefore they are necessary parties. The *cestuis que trust* (or beneficiaries,) have the equitable and ultimate interest to be affected by the decree, and therefore they are necessary parties." Cooper's Eq., Pl.,—34. The legal title to the land levied on in this case being in the trustees it was error in the court below to decree the sale of the land to pay the debt before the trustees were made parties to the cause. Although the mere naked legal title to the land may be vested in the trustees in this case for the use of the Company, still it is proper and necessary for the trustees to be before the court, so that if a sale is decreed, the court may be able by its decree, to pass the legal title to the purchaser, as well as the equitable right. There was no demurrer to the bill, because the trustees were not made parties, and, so far as the record discloses, no objection was made in the court below because the trustees were not parties to the cause. Still the appellate court will reverse a decree for the want of necessary parties, though the objection was not taken in the court below. *Taylor's Admr., v. Spindle,* 2 Gratt., 44;

*Jameson's Admx., v. Deshields*, 3 Gratt., 4; *Richardson v. Davis and wife*, 21 Gratt., 706.

"The *second* error assigned is that "the court erred in not quashing the attachment and dismissing the proceedings thereon." No reason was stated in argument in support of this error and in fact it was abandoned in argument by the appellant's counsel. No reason having been given why this assignment of error should be sustained, and being unable to see any, this assignment of error must be overruled.

The *third* error assigned is that "it was error to refuse the filing of the cross bill. No relief could be given upon appellant's answer. After the answer was filed and proofs taken, Baker, the appellee, removed from the State and became a non-resident insolvent. The Company's said cross bill sets up, substantially, the same matters against complainant, as are relied on in the answer of the Company in its defense, chief and most important of which is, that the oil tanks were warranted to be of first class quality, as to material of which they were constructed, whereas, in fact, they were made of inferior lumber, and were not of first class, as agreed to be constructed, &c. Benjamin on Sales, 680, says: "Where the goods delivered to the buyer are of inferior quality to that which was warranted by the vendor, the buyer has three remedies : *First*. He may refuse to accept the goods, and return them, except in the case of a specific chattel in which the property has passed to him, as explained in the preceding chapter. *Second*. He may accept the goods and bring a cross action for the breach of the warranty. *Third*. If he has not paid the price, he may plead the breach of warranty in reduction of the damages in the action brought by the vendor for the price." If this had been an action of assumpsit to recover the price of the oil tanks the Company would be entitled, on a proper issue being made, to have deducted or abated from the actual price, so much as it proved itself entitled

by reason of the breach of warranty, if there was a warranty satisfactorily proven. In the case of *Ward v. Fellers*, 3 Mich., 281, being an action of assumpsit, it was *held* and supported by an able opinion delivered by judge Martin, who delivered the opinion of the court, that "where the defendant having a demand against the complainant springing out of the same contract or transaction upon which the suit is brought, elects to use his claim by way of recoupment, he can only set it up in abatement, and can not go beyond that, as in set off, and have a balance certified in his favor. The defence of recoupment is distinguishable from that of set off in the following particulars : 1st. In being confined to matters arising out of, and connected with the transaction or contract upon which the suit is brought. 2d. In having no regard as to whether such matters are liquidated or unliquidated. 3rd. That the judgment is not the subject of statutory regulations, but controlled by the rules of the common law." The defendant has the election whether he will set up his claim in answer to the plaintiff's demand or resort to his cross action. See opinion of court in the case last cited, 289. It seems to me that the doctrine stated in Benjamin on Sales and in the case in 3 Mich., is reasonable and just and should prevail in this State in proper cases, and that such is the true common law rule without reference to statutory provision or rules of equity.

The complainant's demand in the case before us is a legal, and not an equitable demand, and this suit is a proceeding in equity to enforce the legal demand by foreign attachment, based upon a statute, and the defendant is, and should be, entitled to make at least such defences against the plaintiff's demand, in whole or in part, as he would be entitled if the case were an action at law, leaving out of view equitable defences. On the examination of the Company's answer, I feel satisfied that if the Company had succeeded in establishing the warranty, and breach thereof, stated and set up in the answer, it would be entitled to a de-

duction or abatement from the contract price of the two oil tanks, to such an amount as it was proven to be justly and legally entitled, by reason of the breach of warranty; and I furthermore think, from the character of the answer, that it may be assumed that the Company did elect to rely upon such defence, by way of recoupment, though the answer does not so state, in express words. It then being competent for the court to allow the Company a deduction or abatement from the contract price of the two oil tanks, and the Company having taken evidence on that subject, tending to support that defence, it was, in fact, unnecessary to file a cross-bill for that purpose. I think, however, that considering the whole evidence in the cause, the Company's claim of a warranty, and that it has sustained damages by reason of a breach thereof, by the complainant, is not satisfactorily established. Again, even though it were allowable for the Company to file its cross-bill in this case, if offered at the proper time, still it is clear that it was not proper to allow it to file it at the time it was offered, to operate as prayed. It had certainly been delayed an unreasonable time, and no excuse whatever is given for the delay. The reason mainly urged here, why it should have been allowed to have been filed, as prayed, and to have the effect of staying or suspending further proceedings in the original suit, until an account was taken of the matters set up in the cross-bill, as therein prayed, is that the complainant, Baker, had become a non-resident of the State since the commencement of the original suit. Baker's deposition is taken in the cause. It was taken on the 28th day of July, 1869, and in his deposition, he, (Baker,) says that he resides in Omaha, Nebraska. More than two years after Baker's deposition was taken, the Company offered its cross-bill. During this two years the Company must have known that Baker was not a resident of this State. Again, all the proofs in the cause were taken more than two years prior to the offering to file the cross-bill. The offer to file the cross-bill, un-

der the circumstances of this case, was unreasonably delayed, as no reason or excuse is given for such delay. The court will not suspend the hearing of the original cause on account of a cross-bill, when that cross-bill has been filed at an unreasonable period.—Rob. Old Prac., 319, and cases there cited. The appellants third assignment of error must, therefore, be overruled.

The *fourth* assignment of error is, that "it was error to decree for the appellee, upon the pleadings and proofs in the cause." On a careful examination of the evidence disclosed by the record, I am of opinion that the court below did not err in rendering a personal decree against the said Company, (as the Company had appeared and filed its answer in the cause,) for the amount stated in the decree, together with the costs of the suit. While the evidence adduced by complainant and defendant is somewhat conflicting, the weight of the evidence is in favor of the complainant's claim against the Company, as to amount, as ascertained and adjudicated by the court below, in its decree rendered in the cause on the 27th day of November, 1871. The fourth assignment of error must, therefore, be overruled.

The *fifth* assignment of error is that "the mechanic's lien of P. D. Rees was a proper set off, and should have been allowed." As to this assignment, it is sufficient to say that the record fails to disclose proof of any such mechanic's lien.

The *sixth* assignment of error is that it was error to decree the sale of the land for cash, and not to require the special commissioner to give bond with security, conditioned according to law, before making the sale. Under the statute, as it was at the date of the decree of sale, it was certainly not error to direct the sale of the land to be made for cash. But as the sale was directed to be made for cash, both of the real and personal property levied on, I think the court ought to have required the commissioner to give bond, with good personal security, in a penalty fixed by

the court, conditioned according to law. It seems to me this is the better practice, and should be adhered to, especially as the law requires that such bond and security shall be given before the commissioner is authorized to receive any money upon the sale. While this might not be sufficient cause for reversing a decree of sale in all cases, still I think it is much the better practice where sales are decreed for cash in hand, to require the special commissioner, before he makes sale, to execute and file the bond ; and this would seem to be contemplated by the law.

The appellee, by his counsel, has asked us if we were of opinion that the personal decree rendered against the said Company was authorized by the evidence to strike out so much of the decree as directs the sale of the property and appoints a special commissioner, &c., and leave the personal decree against the Company for the money and costs of suit, standing in full force against the Company. The decree in this cause is, on its face, very similar in form, to the decree in the case of *Woodson, Trustee, v. Perkins*, 5 Gratt., 345. In that case there was a personal decree against the plaintiff for a sum of money, followed, as in this case, with a provision that unless the money was paid within a specified period, that certain slaves should be sold, &c., and directed to whom the proceeds of sale should be paid. But the court said it was an interlocutory decree, and that no execution could issue on the decree, for the money decreed, without leave of the court. And that, as there was no ground for a personal decree against the plaintiff, who was a mere trustee, it would have been competent for the court at any time before final decree, so to have modified the decree as to have relieved the trustee from any supposed personal liability growing out of the general terms of the interlocutory decree. The case of *Muller v. Bailey*, 21 Gratt., 521, was also cited by appellee. But I do not think these cases sustain the appellee's position in this case. The views of the judges in these cases are predicated upon the idea

that such action may be had when the error is merely
formal, and not substantial. But this is substantially
a proceeding *in rem*; although, because the Company ap-
peared and answered, it is competent to render a personal
decree against it for the amount of money due and costs
of suit. The original object of the suit was to obtain
a judgment against the lands, and the sale thereof, to
satisfy the amount of money due from the said Company
to the complainant, and the decree, when taken alto-
gether, is in fact but a decree *in rem*. No leave is given
to sue out execution against the said Company upon that
part of the decree which is for money, and, I apprehend,
that it was not contemplated that execution should issue,
without leave of the court first obtained. The decree
decided the principles of the case, so far as to determine
that the complainant was entitled to a decree against the
lands to pay the ascertained debt and costs of suit, as the
case was then presented by the pleadings and proofs, and
under the law, the Company was entitled to appeal to the
Supreme Court of Appeals from that decree, and to have
the same reversed, if erroneous, and recover its costs
against the complainant. Then, in this case, to grant
the complainant's request or motion, and strike out so
much of the decree as directs a sale, &c., and affirm so
much of the decree as is for the money and costs of suit,
and give the appellee costs against the appellant, would,
in effect, change the whole character of the decree, in
substance as well as form, to the manifest prejudice of
the rights of the appellant. This, I do not think, should
be done, especially in a case like the present.

The attachment, I think, is a lien on the oil tanks up-
on which it was levied, if they are not so attached to the
land as in legal contemplation to be a part thereof.
That the tanks are a part of the realty, there is nothing
in the record to show. The bill, in effect, alleges that the
oil tanks are personal property and the answer does not
contest the facts, and there is no evidence in the record
upon the subject. The sheriff's return says that that the

tanks are standing on the Rathbone Oil Tract Company's lands. For anything that appears in the record, the oil tanks, and the oil therein levied on, are personal property of said Company, and the court might have, properly, directed the same to be sold to pay the debt and costs, without the trustees being made parties to the suit, but not so as to the land. For these reasons, the decree of the circuit court of Wirt county rendered in this cause on the 27th day of November, 1871, must be reversed, with costs in this Court, in favor of the appellant.

Paull and Moore, Judges, concurred. Absent Hoffman, Judge, by reason of sickness.

The following is the decree entered in this suit here:

And this court proceeding to render such decree as the court below should have rendered: It is adjudged, ordered and decreed that the complainant, J. W. Baker, recover against the defendant Rathbone Oil Tract Company the sum of $1,842.05, with interest thereon from the 16th day February, 1867, subject to a credit, of $1,000, paid on said 16th day of February, 1867, and the further sum of $150, paid February, 8, 1867, and that the complainant also recover from defendant Rathbone Oil Company his costs about the prosecution of this suit in said circuit court expended, and leave is given the complainant to sue out execution thereon, if he so desires. And this cause is remanded to the said circuit court of Wirt county, with directions to said court to proceed to direct so much of the personal property levied on, as may be necessary, to be sold, if the the complainant's debt and costs are not paid or otherwise made, within some reasonable time, to be fixed by the court, if asked by the complainant; and with further directions, if it should become necessary to resort to a sale of any part of the land on which the attachment in the cause was levied, not to proceed to make a decree to sell any part of the land to pay said debt, interest and costs, or any part thereof, until

1874.
January Term.

Baker
v.
Oil Tract Co.

Wm. Whiteright and T. J. P. Giranes Foster are made parties to this suit; and for this purpose, the complainant, if he asks it, may have leave to file an amended bill, and if the complainant does not ask a sale of the personal property, or file an amended bill making said trustees parties to this suit, or both, in a reasonable time, to be adjudged by said circuit court, then the circuit court shall dismiss the cause, as to the property attached; or the circuit court may dismiss the cause as to the property attached, at any time, on motion of the complainant.

DECREE REVERSED.