CHAPMAN *v.* THE PITTSBURGH & STEUBENVILLE RAILROAD COMPANY *et. al.*

Decided May 30, 1881.

1. The general rule is, that when proceedings are had to sell the fee in land, it is not necessary to make the lessee of the land a party to the suit.

2. Where it does not appear in the pleadings or otherwise in the case, that a person has an interest in the subject-matter of the suit, he is not a necessary party to the suit.

3. Where a firm takes a contract from a corporation to construct an improvement, and said firm sub-contracts to another firm, which does a large amount of work, and the first firm fails and cannot pay the sub-contractors, and to induce the sub-contractors to go on with the work the corporation assumes to pay the old debt due the sub-contractors, and releases the contractors from all obligations to pay such old debt, the first contracting firm is not a necessary party.

4. The general rule is, that when it is necessary to adjudicate the rights of an assignee, the assignor must be made a party to the suit; but to this rule there is the exception, that where the assignment is absolute and unconditional, leaving no equitable interest whatever in the assignor, and the extent and validity of the assignment is neither doubted nor denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the assignor a party.

5. If a person is not named in the bill, and no allegation with reference to him appears therein, the naming of him in the summons does not make him a party to the suit, although he may have been served with process.

6. Although a person be named in the prayer of the bill and also in the summons and served with process, yet if there is no allegation in the bill with reference to him, he is not a party to the suit, because there is nothing in the bill, to which he could answer, and his rights, if he has any, are not to be adjudicated without giving him an opportunity to defend his interest.

7. The Court will not take judicial notice, that a railroad company under its charter condemned or acquired title to any particular land, or strip of land.

8. Where a strip of land with a railroad track thereon in a proceeding against a foreign corporation and with no charter privilege from this State, in which the road is situated, is attached at the suit of a creditor, and it does not appear in the record, that any railroad chartered in this State has any interest therein, the Court will regard the strip of land so attached as ordinary real estate; but no decree with reference thereto or sale of the land thereunder can affect the rights of any railroad chartered in this State or any interest of such railroad in such land, of whatever character that interest may be, such road not being a party to the suit.

9. Generally exceptions to the reports of master-commissioners partake of the nature of special demurrers; and if the report is erroneous, the party complaining of the report or excepting thereto must point out the errors in his exceptions with reasonable certainty, so as to direct the mind of the Court to them. When he does so, the parts not excepted to are admitted to be correct, not only as regards the principles, but also as relates to the evidence on which they are founded.

10. If a railroad company let a contract to construct a road to a firm, and that firm sub-lets the contract to another firm, which does a large amount of work, and the first firm fails and does not pay the sub-contractors, and the railroad company to induce the sub-contractors to go on with the work agrees to pay to them the debt of the contractors, such agreement is founded on a valid consideration and is binding.

11. Where three suits are consolidated, and there are attachments in each, and the defendant, a non-resident corporation, appears in the suits, and a personal decree is rendered against it, but in one of the suits the trustees holding the legal title are not before the Court, and the Court as to that suit declines to make an order of sale as to the attached property but remands it to rules to bring in the trustees holding the legal title, and in this state of the case an appeal is taken from the decree in the consolidated suits, this Court will not consider any alleged errors in such attachment, because its validity had not been passed upon by the circuit court.

12. Where the bill makes reference to important exhibits and bases allegations thereon, and the defendant answers and does not deny the existence of the exhibits nor contest their validity, and they are not produced, the defendant can make no objection in the appellate court to their non-production.

13. Where an attachment is sued out against a non-resident corporation, which has the equitable title to real estate attached in the cause, a personal decree may be rendered against such non-resident corporation, which appears in the cause; but the attached property will not be sold in the absence of the trustees, who hold the legal title; they must either be served with process, or, if non-residents, an order of publication must issue against them and be duly published.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Brooke rendered on the 22d day of February, 1877, in three consolidated causes in said court then pending, in which G. M. Chapman was plaintiff and the Pittsburgh & Steubenville Railroad Company and others were defendants, allowed upon the petition of said company.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

There are three suits consolidated in this record. On the 4th day of January, 1867, the plaintiff filed his affidavit for an attachment in equity, claiming a large amount of indebtedness due him as assignee of J. R. Cook & Co., and J. R.

Cook. The same day a summons in chancery issued from the clerk of the circuit court of Brooke county, on which summons an order of attachment was by the clerk endorsed, and on the same day the sheriff of the county endorsed his levy. To this suit, the Pittsburgh & Steubenville Railroad Company, and Thomas Seabrooke, trustee, were made defendants; and an affidavit being filed that said defendants were both non-residents, an order of publication was issued, which was, as the decree shows, executed.

On the 12th day of January, 1867, the said Chapman filed another affidavit claiming a further large indebtedness to him as the assignee of said J. R. Cook & Co. and J. R. Cook; and James Hervey also filed on the same day an affidavit for said Chapman covering the same indebtedness. The affidavit of the plaintiff was made on the 7th day of January, 1867, in Illinois. On the said 12th day of January, 1867, a summons issued in chancery in this suit No. 2, in Brooke county, and an order of attachment was by the clerk endorsed thereon; and on the same day a levy was by the sheriff made on the same property, as was mentioned in the levy in the first suit, to wit, on all "the legal and equitable interest of the Pittsburgh & Steubenville Railroad Company in the real estate of said company and in the right of Thomas Seabrooke, trustee, in the said county of Brooke, and particularly on a piece or tract of land about one hundred feet wide, extending from or near to the Ohio river, near the mouth of Harmon's creek, along the ravine of said creek, or near the same, to or near the Pennsylvania state line; also upon the railroad track and appurtenances on said land."

In May, 1867, the bill in this case was filed, making the said railroad company, Thomas Seabrooke, trustee, Isaac Jones and Robert Woods defendants; and an affidavit being filed of the non-residence of said corporation and also of the other defendants, an order of publication issued, which according to the decree was "duly executed."

Suit No. 3 was instituted in Hancock county, and the affidavit for an attachment made by the said plaintiff, claiming as assignee, &c., of the same parties and in his own right and as assignee of James Andrews, a further large indebtedness, was made and filed by said Chapman on the 11th day of June,

1867. A summons in chancery issued on the same day, and on it an order of attachment was by the clerk of the circuit court of Hancock county endorsed, and was levied by the sheriff on the same day "on all the lands, railroad track, railroad bed and premises on said land belonging to the Pittsburgh & Steubenville Railroad Company in the county of Hancock," &c.

The bill in this cause was filed at September rules, 1867, and made defendants thereto the said railroad company, Daniel Tyler and Ambrose W. Thompson, trustees, Isaac Jones, Robert Woods, The Holliday's Cove Railroad Company and Thomas McElrath, trustee; and The Western Transportation Company was also named in the process, but no allegation against it appeared in the bill. Affidavit being filed, that all the above parties except Daniel Tyler and Ambrose W. Thompson, trustees, who were omitted from the affidavit, were non-residents of the State, an order of publication issued, which, the decree recites, was "duly executed." The court refused as to this case to order a sale of the attached property, until the said trustees were before the court by publication or otherwise. The defendant, The Pittsburgh and Steubenville Railroad Company, answered in both the Brooke county cases, but not in the Hancock county case. By consent of plaintiff and The Pittsburgh and Steubenville Railroad Company by counsel on the 8th day of December, 1869, the Hancock county suit was removed to the circuit court of Brooke county. . On the 16th day of December, 1869, by consent of the same parties the three suits were consolidated. On the same day on motion of the plaintiff the causes were referred to commissioner A. J. Clark, "to audit, state and report an account showing indebtedness, if any, upon the part of the defendant, The Pittsburgh and Steubenville Railroad Company, to the complainant by assignment or otherwise upon the claims set up in each and all of the bills in the cases now consolidated or upon any of them, with power to take such additional testimony, as either party may produce before him at such time or times as the master may fix upon, &c."

On the 4th of March, 1875, the master filed his report. To this report both the plaintiff and defendant, the Pittsburgh and Steubenville Railroad Company, filed exceptions.

As the plaintiff's exceptions do not appear to be insisted upon, I deem it unnecessary to copy them. The railroad company, by counsel, filed the following exceptions in substance to said report :

1. That he does not report, that the claims were due at the date of the attachment.

.2. The claim allowed in favor of John S. King & Co. in account with J. R. Cook & Co. is illegal and void, and constitutes no claim upon the defendant, being a sub-contract by J. R. Cook & Co. with J. S. King & Co., who failed to perform their contracts, and had really no assignable interest, if they had made such assignment.

3. To the allowance of claim in exhibit "A" on the ground that said J. R. Cook & Co. never had any contract whatever with the said railroad company for the construction of their work or any part thereof, and the same is unsupported by evidence.

4. To the allowance of account exhibit "C," on the ground that there is no evidence to support the same, and that the same is illegal and void.

5. In the allowance of claim set forth in exhibit "D," on the ground that there is no evidence to show, that the certified estimates therein specified belonged to, or, at the time the suit was brought, were the property of plaintiff.

6. To the whole report, on the ground that commissioner failed to pass upon the competency or admissibility of testimony taken in the cause, as the same was in the opinion of defendant most important to a fair trial. By consent this matter was referred back to the commissioner, and he made the report desired, which he said did not change the state of the account.

7. Because the Commissioner reported, that the defendant was, on the the 4th day of January, 1867, indebted to complainant, assignee of J. R. Cook & Co., in the sum of $20,466.12, with interest from September 1, 1857, as specified in exhibit "A," whereas the commissioner ought to have reported, that the defendant was not on the said 4th day of January, 1867, or at any time, indebted to the plaintiff, as assignee or otherwise, in said sums with interest, or any part thereof.

8. Because said commissioner reports, that on the 4th day of January, 1867, the defendant was indebted to the plaintiff in the sum of $77,059.00, with interest from February 1, 1858, as detailed in exhibit "B," when he should have reported, that defendant was not on that day or at any other time indebted to the plaintiff in that sum and interest or any part thereof.

9. Because said commissioner reports, that on said day the defendant was indebted to plaintiff as assignee, &c., in the sum of $41,550.00, with interest, as shown in detail in exhibit "C;" when he ought to have reported, that defendant did not owe him such sum of money or any part thereof.

10. Because said commissioner reports, that at said date the defendant owed plaintiff for the coupons mentioned in said report the sum of $10,430.00 with interest, which is computed to amount on the 1st day of February, 1875, to $7,434.00; when he ought to have reported, that defendant did not owe complainant said principal and interest or any part thereof.

11. Because said commissioner has reported, that on the said 4th January, 1867, the defendant was indebted to plaintiff in the sum of $26,064.95 with interest from March 1, 1859, for the certified estimates mentioned in said report and exhibit "D;" when the commissioner should have reported, that the defendant did not owe said sum of money and interest or any part thereof.

On the 22d day of February, 1877, the court entered the decree appealed from and passed upon the said exceptions. The court sustained the exception to the claim in exhibit "C" "as to seven and a half per cent. *per annum* on the excess over $500,000.00 for exchange of bonds. It also sustained the exceptions as to all coupons of a less denomination than $17.50, evidently because no such coupons had been described in the bill. It also sustained exception as to the $26,054.00 for certified estimates. The court overruled all the other exceptions and rendered a formal decree against the defendant, The Pittsburgh and Steubenville Railway Company, for $298,081.23 with interest on the principal, $143,495.12 from the date of the decree, and also for costs, and ascertaining the amount that was a lien on the property attached in Brooke county, as appeared in the two Brooke county suits, ordered

the said attached property in Brooke county to be sold to pay the same.

There is a large number of depositions and other evidence in the cause, making near three hundred and fifty printed pages, which was all considered by the master.

The court did not order the sale of the attached property in the Hancock county case, because the legal title was not be-fore the court, and remanded that cause to rules with leave to the plaintiff to make new parties thereto.

From and to the decree rendered in the said consolidated cases, the defendant, The Pittsburgh and Steubenville Rail-road Company, obtained an appeal and *supersedeas*.

*Daniel Lamb*, for appellant relied on the following authori-ties: 2 Rob. (old) Pr. 349, 350; 3 Munf. 79; 1 H. & M. 543; 1 Dan. Chy. Pr. (3d ed.) p. 338; Sto. Eq. Pl. § 287; 5 W. Va. 24;10 W. Va. 135;3 Metc. (Ky.) 278; *Id.* 181; 1 Metc. (Ky.) 470; 1 Davis 184; 65 N. Y. 310; 2 Pat. & H. 47; 3 Leigh 306; 2 U. S. Dig. 1st Ser. pp. 64–5, ¶¶. 1176, 1181; 2 H. &M . 315; 18 Gratt. 854; Acts 1877 p. 147; Code of Va. (1860) ch. 151 § 11; 1 Black 518; Sto. Eq. Pl. § 257; 1 Dan. Chy. Pl. (3d ed.) 335; 2 Rob. (old) Pr. 287, 289; 107 Mass. 73; 14 Ohio St. 340; 10 Pet. 209; 7 Wheat. 526; 10 W. Va. 107; 8 W. Va. 274; 9 C. & P. 619; 2 Rob. 258; 1 Dan. Chy. Pr. 192, 195; 18 Gratt. 82; 3 Lead. Cas. in Eq. (3d ed.) 308, 309, 358; *Id.* (4th ed.) 1562, 1564, 1646; 13 Gratt. 426; 7 W. Va. 47; 15 Gratt. 157; 19 Gratt. 747; 6 Rand. 444; 10 Gratt. 179; 28 Gratt. 822; 3 Munf. 29; 7 W. Va 187; *Id.* 458; 10 W. Va. 60; 9 Gratt. 275; 25 Gratt. 375; 6 Gratt. 96; 10 Gratt. 284; 7 Leigh 313; 9 Leigh 49; 3 Rand. 158.

*James Harvey* for appellee cited the following authorities; 25 Ind. 453; 83 Mass. 160; 16 Mich. 478; 1 Esp. 121; Bos. & Pull. 158; 1 E. D. Smith 32, 192; 41 N. H. 388; 33 Vt. 174; 53 N. Y. 114; 55 N. Y. 495; 1 B. & A. 297; 6 Jurist 125; 3 T. R. 174; 2 H. & M. 603; 5 Wend. 277; 34 Barb. 97; 5 Taunt. 450; 11 Allen 123; 14 Allen 407; 9 Gray 435; 24 N. Y. 57; 7 W. Va. 458; 1 Tuck. Com. Book 2 p. 271; 1 Gratt. 347; 5 Cranch 162; 5 Rand. 211; 10 Curtis 164; 16 Pet. 25; 14 Curtis 174; 16 How. 1; 9 Pet.

275 ; 15 How. 233 ; 17 How. 322 ; 21 Curtis 1 ; 1 Wall. 206; 7 Wall. 82 ; *Id.* 103 ; 23 Gratt. 267 ; *Id.* 309 ; 20 Gratt. 377 ; *Id.* 398 ; 11 Gratt. 611; Sto. Eq. (5th ed.) § 284 ; *Id.* § 279 ; 9 Gratt. 131 ; 43 Conn. 234 ; 3 Kent. Com. (8th ed.) 47.

*John J. Jacob* for appellee cited the following authorities : ·10 Gratt. 284 ; 11 Gratt. 610 ; 26 Gratt. 765 ; 7 W. Va. 380 ; *Id.* 454 ; 3 Leigh 307 ; 2 H. & M. 308 ; 15 Gratt. 54 ; Drake Attach. §§ 418, 421 ; 2 Rob. 258 ; 10 W. Va. 130 ; 7 W. Va. 704 ; 10 Gratt. 284 ; 22 Gratt. 205 ; 26 Gratt. 765 ; 3 Gratt. 4 ; 7 W. Va. 454 ; 8 W. Va. 29 ; 1 Dan. Chy. Pr. (3d Am. ed.) 286, 287 ; *Id.* 175, 176 ; *Id.* 201 ; *Malcom v. Scott,* 3 Hare ; 10 Wheat. 152 ; 2 Paige 18 ; Sto. Eq. Pl. §§ 77, 78, 96 ; § 234 ; *Id.* Johns. Chy. 319 ; 7 Ves. & B. 550 ; 5 Madd. 289 ; 2 Atk. 515 ; 3 Swanst. 142 note ; 14 Gratt. 128 ; 11 Gratt. 636 ; 2 H. & M. 611 ; 1 Mat. Dig. 376 note 3 ; 1 Parsons Cont. (4th ed.) 497 ; 2 Pars. Cont. 301, 305 ; 55 N. Y. 495 ; 8 Wheat. 174 ; 2 Leigh 19 ; 2 Myl. & K. 492 ; 2 Meriv. 662 ; 3 Sim. 1 ; 2 Sto. Eq. Juris. §§ 1036 b., 1046, 1196 ; Lead. Cas. in Eq. (4th ed.) 1565, 1566 ; 6 W. Va. 17 ; *Id.* 36 ; 6 B. & C. 360 ; 13 Pick. 183 ; 7 Dana 71 ; Pars. Cont. (5th ed.) 553 ; Taylor Ev. (6th. ed.) 248, 254 ; M. & M. 182 ; Stephens Pl. (4th ed.) 142 ; 2 East 339 ; Greenl. Ev. §§ 60, 63 ; Gresley Eq. Ev. (Am. ed.) 170, 173 ; Dan. Chy. Pr. (4th ed.) 862 ; *Id.* (3d ed.) 857 ; P. & P. in Eq. 71 ; *Id.* 55 ; 5 Abbott (U. S.) 59 ; 36 How. Pr. R. 138 ; 4 Rob. (N. Y.) 672 ; 17 Johns. 210 ; 17 Gratt. 187 ; 25 Gratt. 28 ; 21 Gratt. 73 ; 22 Gratt. 364 ; 26 Gratt. 563.

JOHNSON, JUDGE, announced the opinion of the Court.

This cause has given the Court much trouble ; more to determine what questions ought not to be decided in the cause, than how to decide those which are manifestly proper for our decision. The record contains over four hundred and fifty printed pages, and nearly two hundred and fifty pages of printed argument are filed.

The first question that will be considered is : Were the proper parties before the court ? It is insisted, that the Western Transportation Company ought to have been a party to suits Nos. 1 and 2. The interest of the said company was that

of a lessee. It has been frequently held, and the general rule is, that where proceedings are had to sell the fee in the land, it is not necessary to make the lessee of the land a party. *Lawley* v *Walden*, 3 Swans. 142; 1 Dan. Chy. Pr. 201. The record discloses the fact, that the lease of the Western Transportation Company was from the defendant, The Pittsburgh and Steubenville Railroad Company, and was a lease of the railroad in the state of Virginia, authorizing the lessee to operate said railroad. The record clearly discloses the fact, that both The Pittsburgh and Steubenville Railroad Company and the Western Transportation Company were foreign corporations created by the laws of Pennsylvania, and it is not pretended that either of said companies had any charter or license from the State of Virginia or this State to operate a railroad in the State of Virginia or this State; and without such charter or license neither could legally operate a railroad in this State. If they had such charter or license, then as to all their property in this State they would be domestic corporations, and of course no attachment would lie against their property, on the ground that they were foreign corporations. A foreign railroad corporation cannot emigrate from the State that gave it birth and do business in another State except by the charter or license of the State, into which it proposes to extend its road. *Pittsburgh, Wheeling and Kentucky Railroad Company* v. *Baltimore and Ohio Railroad Company*, 17 W. Va. 812. Therefore in this proceeding we are compelled to regard the strip of land attached, as we would any other real estate, and the said Western Transportation Company was not a necessary party to the suits or either of them.

It is also insisted that James Andrews should have been made a party because of some supposed interest in the commission for the exchange of bonds; but as it does not appear from the record, that he had any such interest in those suits, and as he was examined in the suits as a witness and claimed no interest therein, he was not a necessary party.

It is further argued, that said Andrews ought to have been made a defendant to suit No. 1, because of an order that had been given him on a part of the fund claimed; but Andrews himself admits satisfaction under said order, as appears by his receipt filed in the cause.

It is claimed that the firm of J. S. King & Co. ought to have been made defendants to suit No. 1. It does not appear upon the face of the bill, that the said King & Co. had any interest in the cause. The bill alleges, that J. R. Cook & Co. as sub-contractors of J. S. King & Co. performed a large amount of labor in the construction of said railroad, furnished a large amount of materials for the same, amounting in the aggregate to $65,108.71, and received sundry payments, amounting in all to $28,642.85, leaving due and unpaid to J. R. Cook & Co. the sum of $36,466.12, which balance, the said Pittsburgh and Steubenville Railroad Company agreed to pay to said J. R. Cook & Co.; and to this allegation of the bill the said defendant answered, "that true it is, that the said Pittsburgh and Steubenville Railroad Company did agree to pay over to J. R. Cook & Co. any indebtedness owed by said company to said J. S. King & Co." It further appears from the record, that the said J. S. King & Co. had a lease of the road, and when the Pittsburgh and Steubenville Railroad Company, to induce the sub-contractors under said King & Co., to-wit : J. R. Cook & Co., to go on with the work, agreed to pay them the amount, that King & Co. owed them, to further carry out its plans, it released the said King & Co. from any obligations under their lease or otherwise, and cancelled the lease.

J. R. Cook in his deposition says: "The object of the meeting in Philadelphia was, to devise some means to get rid of John S. King. He had been some time, two months, after his failure trying to raise money and to dispose of his contract in the east. He was asked upon what terms he would surrender his contract and lease of the road. He said he would do it conditioned upon his liabilities being met, not leaving him in debt. He said that the negotiation of the bonds paid his debts, where he had given his notes and pledged the bonds in security. He said he owed sub-contractors, but these bonds would not pay their claims and he wanted them paid; that was the principal condition, on which he was willing to surrender his contract and lease."

The surrender was made, and the Pittsburgh and Steubenville Railroad Company would have no right to a decree over against J. S. King & Co. according to the facts stated in the

record for any indebtedness of theirs paid to J. R. Cook & Co. If there was any such liability on King & Co. to pay the Pittsburgh and Steubenville Railroad Company, then said J. S. King & Co. would be necessary parties to this suit, but it seems to me from the facts disclosed in this record, that King & Co. were entirely relieved from any such liability, and they have no interest whatever in these suits or either of them, and therefore were not necessary parties.

It is claimed that the firm of J. R. Cook & Co., the assignors of the plaintiff, should have been made defendants in all the said suits. The general rule is, that where it is necessary to adjudicate the rights of an assignee, the assignor must be made a party to the cause, but to this rule there is the exception, that when the assignment is absolute and unconditional leaving no equitable interest whatever in the assignor, and the extent and validity of the assignment is neither doubted nor denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the assignor a party. *Vance* v. *Evans, et al.*, 11 W. Va., 342. The assignment of J. R. Cook & Co., clearly falls within the said exception to the general rule ; and therefore they were not necessary parties to the suits or either of them.

It is insisted, that the Holliday's Cove Railroad Company should have been before the court, when the decree was rendered, as it is claimed it was a domestic corporation and had been named in the bill in suit No. 3, and summons issued but not returned, and to render the decree in the absence of said defendant was error, for which the decree should be reversed. The Holliday's Cove Railroad Company was not made a party to the said suit, although mentioned in the bill and summons. For the same reason the Western Transportation Company was not made a defendant. If a person is not named in the bill and no allegation with reference to him appears therein, the naming of him in the summons does not make him a party to the suit, although he may have been served with process; and though named in the prayer of the bill and in the summons and served with process, yet if there is no allegation in the bill with reference to him, he is not a party to the suit, because there is nothing in the bill to which he could answer, and his rights, if he has any, are not to be adjudicated with-

out giving him an opportunity to defend his interest. *Mosely* v. *Cocke,* 7 Leigh 224.

In the bill there was no reference whatever made to the Holliday's Cove Railroad Company, except that it prays, that that company may be made a party to the bill, and as we have seen, if it had been under these circumstances served with process, it would not have been a party to the suit. But it is said, that it was a necessary party to the suit; and this Court is asked to take judicial notice, not only that it is a domestic corporation, but of every provision in its charter, and that under its charter it acquired the particular "strip of land, and railroad track" attached in these causes. If it were conceded, that the Court would take judicial notice of every railroad charter and the provisions therein contained, which we do not here decide, yet clearly the Court will not take judicial notice, that a railroad company under its charter condemned or acquired title to any particular land or strip of land, upon which it locates its road; such a thing is not of that public notoriety, that every intelligent man is presumed to know it. If the Court could therefore take judicial notice, that the Holliday's Cove Railroad Company was on the 30th day of March, 1860, chartered by the Legislature of Virginia, it will not take judicial notice, that said company acquired by purchase or otherwise the interest of the Pittsburgh and Steubenville Railroad Company in the strip of land, and railroad track attached in these causes. It is not pretended, that there is any evidence in the record to establish such fact, if it exist. The pleadings do not mention such fact, and it therefore nowhere appears in the record, that the Holliday's Cove Railroad Company has any interest in these suits. We must treat the causes, as though nothing but the land was attached, and not distinguish it from such a case. The railroad track being upon it, so far as this record discloses, could make no difference. The franchise of no road is included in this attachment. The defendant, the Pittsburgh and Steubenville Railroad Company, never had any license under the laws of West Virginia to operate a railroad in this State. It seems it acquired an equitable title to the land attached in some way, and perhaps built the track thereon. As far as this record discloses, it does not appear, and we cannot judicially know
,

that any other railroad company is interested in the said strip of land and railroad track; and therefore it does not appear, that the said Holliday's Cove Railroad Company is a necessary party to the said suit.

But if it be a fact, that the said company acquired the interest of the Pittsburgh and Steubenville Railroad Company by virtue of its charter, and that it was under its charter located on this particular strip of land, then it was a necessary party to said suits and was vitally interested; and if it had been made a party, if thus interested, it could have raised the interesting legal question, whether a section of a railroad in full operation can be sold under legal process for the debts of the company, and all other questions affecting its interests. But under the view we have taken of this case, that question, so elaborately and ably argued by the learned counsel, does not arise in these causes. But whatever interests legal or equitable, however acquired, the said Holliday's Cove Railroad Company or any other company chartered by West Virginia, which may have succeeded to its rights and franchises, had at the commencement of these suits, will be wholly unaffected by the decree in these causes or any sale made thereunder, they not being parties to these suits.

The greater part of the argument of counsel for the defendant, the Pittsburgh and Steubenville Railroad Company, is to show, that the proofs in the case did not sustain the commissioner's report, and of the arguments for the plaintiff, that the proofs did sustain the commissioner's report. The account was a long and intricate one, and the evidence before the commissioner amounts to a volume, although, as I know from a careful inspection of the record, part of it is interesting, yet it must have been a laborious task to the circuit court, to hunt through seven or eight hundred pages of manuscript to ascertain, whether every finding of the commissioner was correct, in the absence of exceptions pointing out the particular matters excepted to.

This brings us to the consideration of the question whether the court was justified in overruling the exceptions to the report. In *McCarty et al.* v. *Chalfant et al.*, 14 W. Va. 531, this court held, that generally exceptions to reports of master commissioners partake of the nature of special demurrers; and

if the report is erroneous, the party complaining of the report and excepting thereto must point out the error in his exceptions with reasonable certainty, so as to direct the mind of the court to it. When he does so, the parts not excepted to are admitted to be correct, not only as regards the principles, but also as relates to the evidence on which they are founded. The first exception in that case was: "Because in the first statement of the accounts the commissioner reports John Chalfant indebted to McCarty $78.99." The court held this exception would not require the court to examine the evidence to see whether the statement was justified by the evidence.

The principle settled in the last mentioned case justified the court in overruling the 7th, 8th, 9th, 10th and 11th exceptions without looking into the evidence, as they are all substantially like the exception in *McCarty* v. *Chalfant;* just as vague and indefinite. It would be unjust to require a circuit court upon such an exception to go on a hunt for errors through hundreds of pages of manuscript. If he was required so to do, a commissioner, no matter how intricate the account, would be of little aid to the court. If by merely endorsing upon the report in substance, "The within report is not sustained by evidence," is to put the burden on the judge to examine every particle of evidence, we may as well dispense with commissioners altogether.

The first exception is, that the commissioner does not report that the claims were due at the date of the attachment. In the absence of evidence to the contrary it would be assumed, that the commissioner did so find ; but in these causes, I think, he does in effect find, that the debts were due, when the first suit was instituted.

The second exception is, that the claim of J. R. Cook & Co. against J. S. King & Co. is illegal and void and constitutes no claim upon the defendant. This exception is vague; but if it be considered good, the answer of the defendant, "that true it is, that the Pittsburgh and Steubenville Railroad Company did agree to pay over to J. R. Cook & Co. any indebtedness owing by said company to J. S. King & Co." is a complete answer to the exception, because, as disclosed by the record, one of the inducements of J. R. Cook & Co. to proceed with the construction of the bridge was, that the com-

pany should pay to them the indebtedness of J. S. King & Co., and this was a valid consideration. *Winkler* v. *C. & O. R. Co.*, 12 W. Va. 699.

The third exception is the allowance of the same account, exhibit "A", that shows the indebtedness of J. S. King & Co. to J. R. Cook & Co., the sub-contractors, on the ground that the said J. R. Cook & Co. never had any contract whatever with the said railroad company for the construction of their work or any part thereof. This is a mistake, as the contract is clearly proved; and it is also proved, that to induce J. R. Cook & Co. to go on with the work, the said railroad company assumed to pay to said J. R. Cook & Co. the indebtedness of J. S. King & Co.

The fourth exception is to the allowance of commission on exchange of bonds and is composed of a single item. We think the report as to this item, so far as adopted by the circuit court, is sustained by the evidence.

The fifth exception is to the allowance of claims set forth in exhibit "D," on the ground that there is no evidence to show, that the certified estimates therein specified were, at the time the suit was brought, the property of the plaintiff. But it is unnecessary to consider this exception, as it was sustained by the circuit court, and there was no allowance made of certified estimates.

The sixth exception it is unnecessary to consider, as the objection to the report on the ground therein set forth (whether a good objection or not we do not decide,) was removed by consent of parties.

This court is asked on its own motion to quash the attachment in the Hancock county cause, on the ground that the affidavit, on which it is founded, is fatally defective. That attachment we cannot consider in this appeal, because the court below did not pass upon its validity, but sent that cause to rules, to bring the legal title to the property attached before the court, before it would order a sale thereof.

It is alleged as error, that these suits and each of them were set for hearing, and the decree rendered, in the absence of important papers made exhibits in the bills. It is a sufficient answer, that the defendant did not call for the production of the said exhibits, and in its answer did not deny their exist-

ence, or contest their validity, the defendant cannot in the appellate court object to their non-production.

It is insisted, that the court erred in entering a personal decree upon the demands set up in suit No. 3, when the trustees, who held the legal title, were not before the court. Where an attachment is sued out against a non-resident corporation, which has the equitable title to real estate attached in the cause, a personal decree may be rendered against such non-resident corporation, which appears in the cause, but the attached property will not be sold in the absence of the trustees, who hold the legal title; they must either be served with process, or if non-residents, an order of publication must issue against them and be duly published. *Baker* v. *Oil Tract Co.*, 7 W. Va., 454; *Cirode* v. *Buchanan, Adm'r*, 22 Gratt., 205.

For the foregoing reasons the decree rendered in these consolidated causes, on the 22d day of February, 1877, is affirmed with costs and damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.