# WHEELING.

CHAPMAN *v.* PITTSBURG AND STEUBENVILLE R. R. Co. *et al.*
(*Suit No. 3.*)

Submitted September 8, 1884.—Decided, April 22, 1885.

1. Under the Act of Congress, March 3, 1875, it is too late to make an application to remove a case from the State to the Federal court, several terms after an answer has been filed and excepted to, and the exceptions not passed upon by the court, when the exceptions might have been passed upon, and the case heard at the time such answer was filed.   (p. 306.)

2. Where exceptions to a part of an answer are sustained, and the defendant does not ask leave to amend his answer, it is not error to proceed to hear the case on the bill and so much of the answer, as is not excepted to.  (p. 307.)

3. Where an answer sets up a claim to the attached property, which with the accompanying exhibits clearly shows, that, at the time the attachment was levied, the defendant had no claim to such property, an exception to so much of the answer, as attempts to set up such defence, is properly sustained.  (p. 308.)

4. Where real estate conveyed to a foreign railroad company is attached in this State for the debts of said company, and a defendant claims the property under deed, ordered to be made under proceedings in a foreign court to foreclose a mortgage on the "railroad," and the pleadings in said cause do not assert that the mortgage covers the said property in this State, but the court without passing on that question orders the trustee to sell "all the right, title and interest of the railroad in West Virginia, which passed under said mortgage," and a deed was ordered to be made for such interest, the courts of this State without reference to any conflict of jurisdiction are left free to decide whether any thing passed under said mortgage.  (p. 309.)

5. When a mortgage was executed by a Pennsylvania railroad company authorized under its charter to build a road "from near Pittsburg, Pennsylvania, in the direction of Steubenville, Ohio, to the Pennsylvania State line," and the said mortgage grants the whole of their 'railroad ;' and other property "situated between and at the terminus of their railway at the city of Pittsburg and the boundary line of the State of Virginia in the counties of Alleghany and Washington in the State of Pennsylvania," it conveyed no property whatever in the State of Virginia.  (p. 310.)

6. The attaching creditor in this State, who bid upon property at the sale under such mortgage in the State of Pennsylvania, is not estopped to insist upon his attachment-lien on the property in this State.  (p. 310.)

7. Under sec. 11 of ch. 151 of the Code of 1860 a foreign attachment suit in equity is brought, the affidavit is in form, except it does not state "the nature of the plaintiff's claim" as required by the amendment of 1867 to the first section of the chapter ; a few months afterwards, but before any other rights had attached to the subject, an unexceptionable affidavit was filed, but there was no other order of attachment issued, and no other levy made. HELD :

The lien attached to the land as against everybody at least from the filing of the second affidavit.  (p. 322.)

8. Because *pendente lite* the defendant railroad company has taken possession of the strip of land attached, on which was a road-bed and railroad-track, at the time the attachment was levied, it has no right to insist, that a section of a railroad can not be sold. It takes the property if at all *cum onere*.  (p. 323.)

The facts of the case appear in the opinion of the Court.

*D. Lamb* and *W. P. Hubbard* for appellant.

*Ewing, Melvin & Riley* for appellee.

JOHNSON, PRESIDENT:

This cause No. 3, with Nos. 1 and 2, which were considered and a decree rendered therein on February 22, 1877, were before this Court and the decree affirmed. (18 W. Va. 184.)  A statement of the causes may be there found.  On the same day that said decree was rendered the attachments issued in Nos. 1 and 2 were passed upon, and the attached property ordered to· be sold; but the legal title was not before the Court in this cause, (No. 3) and the attachment therein was not passed upon by the court below for that reason, and this cause was therefore remanded to rules to bring the legal title before the court, before an order could be made to sell the attached property.   The record shows, that in the cause the defendant, the Pittsburg Cincinnati and St. Louis Railway Company, filed its answer on September 19, 1877, and on February 4, 1878, the said company by leave of the court withdrew its answer theretofore offered and filed its answer in suit No. 3, in lieu of the said answer; and the plaintiff took time to except or reply thereto.

The said answer contested the validity of the attachment among other reasons, on the ground that the affidavit filed was fatally defective.   It denies that the Pittsburg and Steubenville Railroad Company was indebted to the plaintiff.  It avers, that the said last named company mortgaged their railroad and other property on October 10, 1856, in trust to Thomas McElrath to secure the first mortgage bonds thereon amounting to a large sum of money, and about the same time executed a second mortgage on said railroad, &c. to secure second mortgage bonds; that said deeds were recorded in

Hancock county on August 31, 1867; that the trustees in said mortgages were purchasers for value without notice of the attachment; that no notice of *lis pendens* was left with the recorder of Hancock county until September 25, 1867; that suit was brought in the supreme court of Pennsylvania by Thomas McElrath *et al* to foreclose said mortgage; and that a decree of foreclosure was entered, and the property ordered to be sold, which was done, and the sale confirmed, and a deed for the property including that portion in West Virginia was ordered to be made to the purchaser, Wm. J. Howard. The answer further avers, that the plaintiff, Chapman, had notice of said sale and was one of the bidders thereat and is therefore bound and concluded by the decrees entered in said suit; that in 1868 the several railroad companies were consolidated into one, which consolidation by act of the Legislature of West Virginia was ratified and confirmed; that on March 3, 1876 the said William J. Howard and wife by deed conveyed to said respondent "all the estate, right, title and interest whatsoever of in and to the railroad property, rights and franchises purchased by the said Wm. J. Howard as aforesaid, which passed to him under and by virtue of the decree of said supreme court and of the said sale and the said deed from Thomas McElrath dated December 7, 1867." The defendant therefore insists, that, at the time said attachment issued on same, the Pittsburg and Steubensville Railroad Company did not own or purchase any property in the said county of Hancock, West Virginia described in said attachment or bill, but that defendant has perfect title thereto.

The answer files as exhibits the proceedings in the Pennsylvania record, together with the several conveyances to show its title to the property. The granting clause in the deed to McElrath, trustee, describes the property conveyed as follows: "The whole of the railroad together with the lands, depots, depot-grounds and buildings situated between and at the terminus of their railway at the city of Pittsburg and the boundary line of the State of Virginia in the counties of Allegheny and Washington, in the State of Pennslvania, and also all the property and franchises, and all the tolls, issues, income and profits of the said company hereafter derived to them from the use of or travel on their said road or any part

thereof; and also all the cars, engines, locomotives, tenders, horses, or other things, used in the business and management of said railroad." The description of the property in the second mortgage is the same.

. The nineteenth point in the bill for foreclosure, describes the "railroad" as follows : "That the 'railroad' intended to be built by said company, referred to in the said mortgage, extends from the city of Pittsburg to the Virginia State line, a distance of about thirty-four miles." The nineteenth point of the answer of the Pittsburg and Steubenville Railroad Company is as follows : "That the road of the Pittsburg and Steubenville Railroad Company extends from the Monongahela river opposite the city of Pittsburg to the Virginia State line in the direction of Steubenville, and the same is now substantially finished."

The master in his report, says : "The Pittsburg and Steubenville Railroad Company was duly incorporated by the legislature of this State by an act approved March 24, 1849. This act authorizes the company to 'construct a railroad, commencing on the Monongahela river near Pittsburg and running in the direction of Steubenville on the Ohio river to a point on the Virginia State line.' The distance between these points is thirty-four miles, and from the State line to Steubenville is eight miles."

To the report of the master there was one exception filed by counsel for complainants which was : "Because the report and decree (drawn by the master) do not provide for the sale of the right, title and interest of the Pittsburg and Steubenville Railroad situate in the State of West Virginia as a part of the mortgaged premises." In passing upon this exception Judge Agnew said :

"The plaintiffs except to the report of the master, on the ground that he omitted to incorporate into the form of a decree submitted by him a provision ordering the trustee in the mortgage to sell the estate and title of the Steubenville Railroad Company in that portion of the railroad situate in the State of West Virginia. Without deciding what estate would pass by the trustees sale under the mortgage, we are of opinion, that we can by our decree operating upon the trustee himself authorize and compel him to sell and convey whatever inter-

est of the Railroad Company will pass under the terms of the mortgage. As it is the desire of all the parties expressed in the agreement, that in the event of a decree of sale being made the sale should pass all possible titles and interest of the railroad company in the whole extent of the road, we will direct that the master's report be so amended. Let a decree be drawn and entered in this case in the form reported by the master * * and adding to the fourth section the following words: 'And that such order shall contain authority and direction to the said Thomas McElrath, the trustee, to sell and convey, all the estate, right, title and interest claimed and demanded of the said, The Pittsburg and Steubenville Railroad Company, of and in that portion of the railroad operated and run by the said company, through their lessees, in the State of West Virginia, between the boundary line of the State of Pennsylvania at the easterly end, and the Ohio river at the westerly end, which passed to him under and by force of the terms and interest of the said mortgage mentioned in the first section of this decree.'"

The decree entered May 29, 1867, provides: " That in default of such payment within the period aforesaid, the railroad, property, estate, premises, appurtenances and franchises conveyed by said mortgage to the said Thomas McElrath named therein, including all the estate, right, title, interest, claim and demand, of the said Pittsburgh and Steubenville Railroad Company, of and in that portion of the railroad operated and run by said Company through their lessees in the State of West Virginia, between the boundary line of the state of Pennsylvania at the easterly end, and the river Ohio, at the westerly end, which passed to him under and by force of the terms and extent of said mortgage be exposed to sale, &c."

The sale was made and reported. In his report the trustee says: "I did expose the aforesaid premises at sale by public vendue or outcry, when and where, W. J. Howard, Esq., became the purchaser thereof, for the price of the sum of $1.960.000.00 (one million, nine hundred and sixty thousand dollars), he being the highest and best bidder, and that the highest and best price bidden for the same."

On December 7, 1867, the court ordered the said McElrath forthwith to execute a deed for said property.  One of the exhibits filed with the answer is a copy of a deed from Thomas Seabrook trustee to the Pittsburg, Cincinnati and St. Louis Railway Company, executed on September 9, 1874, and recorded in Hancock county on September 4, 1877, and in Brooke county on September 19, 1874.  This deed recites the proceedings in the Pennsylvania court, the sale, &c., and at the request of the Pittsburg, Cincinnati and St. Louis Railway Company conveys the several strips of land in Brooke and Hancock counties to said P. C. & St. L. R'y Co.  The deed from Howard to said Company was dated March 3, 1876, admitted to record in Brooke county September 5, 1877, and in Hancock on September 4, 1877.

The exceptions to the answer of the defendant, The Pittsburgh, Cincinnati and St. Louis Railway Company, made in March, 1878, in substance are as follows :  First.—All that portion of the answer which sets up a claim of title to the property through the mortgage, the sale thereunder, the record of the supreme court of Pennsylvania, the deed made by the trustee by order of said court to W. J. Howard, the act of the legislature of West Virginia of July 23, 1878, and the deed from Howard and wife to said defendant shows no title in said defendant and is impertinent.  Second.—So much of the answer as alleges the appearance of the plaintiff before the master in the Pennsylvania suit, the action of the master and court affecting his claim or interest and his bidding at said sale under the decree is impertinent and raises no defence to this suit.  Third.—The charges and averments relating to the merits of the claims of the plaintiffs are not responsive to any charge in the bill affecting the interest of said defendant.  Fourth.—The averment, that the trustees in the first and second mortgages were purchasers without notice, is impertinent.  The cause was heard on March 22, 1883, upon the decree before entered, &c., the answer of the P. C. & St. L. R'y. Co., the exceptions to said cause filed at March rules, 1878, &c.  The exceptions to the answers were sustained, and the cause was heard on the amended bill and so much of said answer as was not affected by said exceptions, and the motion to quash the attachment, which motion was overruled.  The legal title

being before the court, the court proceeded to declare the attachment a lien upon the land levied on therein, to-wit: "The strip of one hundred feet in width, situate in Hancock county, near Harmon's creek, upon which is constructed a railroad-bed and railroad-track," &c., for the sum of $237,-869.71, with interest, &c., and ordered the sheriff of the county to sell the same. The court proceeded further: "And it further appearing to the court that the real estate herein directed to be sold is contiguous to the land directed to be sold by decree of February 22, 1877, (the decree affirmed by this Court,) and that both taken together form a continuous strip of uniform width from the Pennsylvania State line to the Ohio river within the said counties of Brooke and Hancock, the sheriff is directed to make the sale, herein provided for at the same time and place of the sale directed by the said decree of February 22, 1877."

The decree further shows that after the exceptions to the answer had been entered and the motion to quash the attachment overruled, the defendant, the Pittsburg and Steubenville Railroad Company moved to quash and vacate the attachment and levy, which motion the court overruled, and after the decree upon the exceptions to the answer of the P. C. & St. L. R'y Co. had been announced, and its motion to quash the attachment overruled, and after the defendant had objected to the first hearing of the cause, and before the entry of a decree, the said company filed its petition accompanied by a proper bond, asking the removal of the cause to the circuit court of the United States for the district of West Virginia, upon consideration whereof the prayer of the petitioner was rejected. From this decree upon the separate petitions of the Pittsburg and Steubenville Railroad Co. and the Pittsburg, Cincinnati and St. Louis Railway Company an appeal with *supersedeas* was granted.

Did the court err in refusing to enter an order, on the petition of the P. C. & St. L. R'y Co., removing the cause to the circuit court of the United States? The removal was asked under the Act of Congress passed in 1875. We held in the case of *White* v. *Holt, Judge, et al,* 20 W. Va. 792, that under the Act of Congress of March 3, 1875, no case pending in a State court can be removed to a Federal court, un-

less the application to remove is made at or before the term, at which the case could be first tried, and before the trial; and that, when at the first term, at which there could have been a trial, the defendant appeared and demurred to the declaration, and the demurrer was not then considered, but the case was continued to the next term, at which the defendant filed his petition and bond, asking for a removal of the case, the application was made too late, and the court properly refused to enter an order removing the case. Here the defendant filed its answer in 1878. Exceptions to it were filed, which were not decided. The cause afterwards was taken to the Court of Appeals being consolidated with two other causes, and several terms passed, after it was remanded, and at the same term, at which the exceptions were acted on, the petition for removal was filed. The application was too late, and the court properly refused for this reason alone to enter an order of removal. (*Cable* v. *Ellis,* 110 U. S. 289 : *Lynch* v. *Andrews,* 25 W. Va. 751.)

It is also assigned as error, that no issue was made up, the cause not having been set for hearing, the court proceeded to hear the cause on bill and answer against the objection of defendant, and without an opportunity given the defendant to amend its answer. It is a sufficient answer to this assignment, that the defendant did not ask leave to amend its answer, and unless it wished to amend, there was no reason why the cause should not then be heard on bill and answer and if there was no replication to the answer, certainly the defendant could not complain of that.

But it is further objected, that although there was no replication to that part of the answer not excepted to, the court proceeded to find all matters in favor of the plaintiff. These matters here referred to except the objection to the attachment, which we will consider, related to the denial of any indebtedness by the Pittsburg and Steubenville Railroad Company to the plaintiff, which was contested by the said company in its answer and found against it on the proof, and a decree rendered for the indebtedness, which decree was affirmed by this Court. All the title, which the said defendant asserts to the property, it claims through and under the Pittsburg and Steubenville Railroad Company and acquired

the same, if any, after the institution of this suit and levy of attachment. It was therefore a *pendente lite* purchaser and certainly could not now come in and deny the indebtedness of the Pittsburg and Steubenville Railroad Company to the plaintiff. If such a claim could be sustained there could be no end to litigation.

But the appellant insists that the court erred in sustaining the exceptions to the answer.

The first exception is, that all the averments of the answer relating to the first and second mortgages of the Pittsburg and Steubenville Railroad Company, the Pennsylvania suit, the consolidation of the three railroad companies, and the conveyance by McElrath, trustee, to Howard and from Howard to the P. C. & St. L. R'y. Co. were impertinent. This exception involves all the right, title and interest of the said defendant to the attached property. If it had such title as it claimed, then the property having been sold under a mortgage made in 1856 by the Pittsburg and Steubenville Railroad Company, if it was recorded in time in West Virginia, would entirely destroy the efficacy of the attachment, and the plaintiff could not enforce the lien. This then raised a vital question in the cause; and if the answer showed on its face, that the property had been so sold and conveyed, then it was error to sustain the said exception; or if the property had not been properly sold under a decree of the Pennsylvania court, yet the mortgages would constitute prior liens on the property, and for that reason it would have been error to sell to pay the plaintiff's debt without ascertaining these liens and their priorities.

It is insisted that a mortgage of a " railroad " possesses not only the whole road, but the lands belonging to it and essential to the enjoyment of its franchise, whenever a road is thus conveyed without specifying the limits of the road. This is true. (*Railroad Co.* v. *Larimer*, 47 Pa. 465 ; *Wilkins* v. *Canal Co.*, 4 N. J. Eq. 379; *Myer* v. *Johnston*, 53 Ala. 237 ; *Miller* v. *Railroad Co.*, 36 Vt. 452; *Sheets* v. *Selden*, 2 Wall. 177 ; *Dinsmore* v. *Railroad Co.*, 12 Wis. 649.) It is also argued that equity could compel a party within the jurisdiction of the court, who had the legal title to land in a foreign jurisdiction, to convey the land to another party before the court who

was entitled to such conveyance. This proposition seems now to be settled law. (*Penn* v. *Lord Baltimore*, 2 L. C. in Eq. 1823; *Dickinson* v. *Humes' Adm'r*, 8 Grat. 411; *Massie* v. *Watts*, 6 Cr. 148; *Williams* v. *Fitzhugh*, 37 N. Y. 444; *Gardner* v. *Ogden*, 22 N. Y. 327.) In 2 L. C. in Eq. 1832, it is said: "The result of the cases as a whole would seem to be, that as the right of real property is essentially local and can only be enforced at law by a recourse to the local tribunals, equity will follow the law and refuse to assume a power which might further the purposes of justice in particular instances, but would ultimately disturb the comity which ought to exist between the courts of different nations, by bringing the decisions of foreign tribunals into conflict with those of the *locus rei sitæ*. (*The Northern Ind. R. R. Co.* v. *The Michigan Central R. R. Co.*, 15 How. 233; *Watts* v. *Waddle*, 6 Pet. 389, 400; Sto. Eq. Jur. § 774; Sto. on Con. of Laws, §§ 463, 543.) But rights growing out of trust or contract, or founded upon a fraudulent violation of the principles of equity, as between man and man, are purely personal, and will consequently be upheld and enforced both by law and equity whenever jurisdiction has been acquired over the parties, without regard to the nature or situation of the property in which the controversy has its origin, and even when the relief sought consists in a decree for the conveyance of land which lies beyond the control of the court, and can only be reached through the exercise of its power over the person."

But the first question for us to determine is: Did McElrath have any title to the land in West Virginia? The supreme court of Pennsylvania, as we have seen by the statement of the case, refused to pass upon that question but decreed, that he should sell and convey all the title he had by virtue of said mortgage, without saying what it was. It is for us then without considering any legal questions on the conflict of jurisdiction to determine what that right, title and interest was, if any. As we have seen, the language of the mortgage is: "The whole of their railroad, together with the lands, depots, depot-grounds and buildings situated thereon between and at the termini of their railways at the city of Pittsburg and the boundary line of the State of West Virginia in the counties of Allegheny and Washington in the

State of Pennsylvania," &c.   It is argued that in construing
an instrument of writing we are to ascertain the position oc-
cupied by the parties at the time it was made, and interpret
the language they have used in the light afforded by the cir-
cumstances which then surrounded them.   This is a correct
rule, when there is any ambiguity in the language used.   It
seems to me there is none here.   "Their railroad" is by the
very terms of the grant limited to the *termini*, both of which
are within the State of Pennsylvania.   That is all of the
road, if it was longer, that is included in this mortgage.   The
mortgage of a railroad passes its franchises, its right to do
business and whatever right the P. C. &. St. L. R'y Co. has to do
business in this State now.   The Pittsburgh and Steubenville
Railroad Company never did have a right to run a railroad
through the State of West Virginia and on August 1, 1856,
did not pretend to mortgage what it did not have.   It had
no "railroad" in West Virginia to mortgage.   The pleadings
in the Pennsylvania suit as well as the master's report all
show, that the "railroad" only extended to, not beyond, the
Pennsylvania line.   Therefore, none of the attached land pass-
ed to McElrath in the deed of August 1, 1856, nor in the
second mortgage deed, nor did any of said land pass by the
deed from McElrath to Howard nor from Howard to the P.
C. & St. L. R'y Co.   The court therefore did not err in sus-
taining the first exception to the answer.

The second exception was, that the averments respecting
plaintiffs appearing before the master in the Pennsylvania
suit and his bidding at the sale were irrevelant.   This aver-
in the answer was designed to plead that the plaintiff was in
equity estopped to deny the title of the defendant.   As the
attached lands were not included in the mortgage, of course
there is here no estoppal on the plaintiff, and said exception
was properly sustained.

The third exception was that the denial of the plaintiff's
claim against the Pittsburg and Steubenville Railroad was
not relevant to any issue then before the court and was im-
pertinent, as that matter had been passed upon and adjudicated
between the said creditor and debtor.   This exception was
properly sustained, because the said defendant had no inter-
est in that question, and it had been settled and determined.

The fourth and last exception was the averment, that the trustees in said first and second mortgages were purchasers without notice, was impertinent. The exception was properly sustained, as they were not purchasers of said attached property.

It is insisted that the attachment ought to be quashed, because the statute was not complied with; that the property was not sufficiently described, and that the affidavit was wholly insufficient. This defence is raised in the answer of the Pittsburg, Cincinnati and St. Louis Railway Company, and by the motions made by said company and by the Pittsburg and Steubenville Railroad Company. The bill particularly describes the property which is attached. The order of attachment and endorsement on the subpoena are as follows:

"Proper affidavit having been made the sheriff of Hancock county is hereby directed to attach any estate in the county of Hancock, in the State of West Virginia, belonging to the Pittsburg and Steubenville Railroad Company, and particularly attach a piece or strip of land one hundred feet wide running through the said county of Hancock, near Harmon's creek, and on which is constructed a railroad-track, railroad-bed, and the premises and appurtenances on said land, or a sufficiency thereof to satisfy the plaintiff's claim of $300,000.00 and interest and costs of suit." The return is endorsed on said order as follows: "Levied the above attachment on all the lands, railroad-track, railroad-beds, and the premises and appurtenances belonging to the Pittsburg and Steubenville Railroad Company, in the county of Hancock, in the State of West Virginia, being the property specified in the attachment endorsed hereon, at five o'clock on June 11, 1867." Clearly meaning "being the property specified in the order or attachment, on which this levy is endorsed."

The first affidavit made on said June 11, 1867, by the plaintiff, Chapman, is as follows:

"George Marcus Chapman this —— day of June, 1867, personally appeared before me, Jasper Whims, clerk of said court, in my office as said clerk, and made oath before me in my said office, and said the Pittsburg and Steubenville Railroad Company is justly indebted to me in the sum of $300,-

000.00, and that said claim is just, and no part thereof has been paid, and that there is just cause of action therefor, and that the Pittsburg and Steubenville Railroad Company is a foreign corporation," &c.

In September, 1867, a proper paper was filed for an order of publication, in which the objects of the suit is set forth. On November 20, 1867, James Hervy, the agent of the plaintiff, filed an affidavit specifying particularly the nature of the plaintiff's claim, that it was just, that the plaintiff ought to recover, and that the defendant had estate in the said county of Hancock, and described the estate. There was no other endorsement on the subpoena after the affidavit was made. It is insisted that for the defect in the first affidavit the attachment should have been quashed; and that after an affidavit is made and an attachment issued upon it, the affidavit can not be amended unless by authority of statute. In support of this position the following cases are cited. *Pope* v. *Hibernia Insurance Company*, 24 Ohio St. 481; *Mark* v. *Abromson*, 53 Tex. 264; *Hally* v. *Jackson*, 48 Md. 254; *Lillard* v. *Carter*, 7 Heisk. 604; *Watts* v. *Carnes*, 4 Heisk. 534; *Sullivan* v. *Fugate*, 1 Heisk. 22; *Hall* v. *Brazleton*, 40 Ala. 406; *Shields* v. *Dothard*, 59 Ala. 596. I have examined all these cases, and, while they sustain the proposition, none of them were foreign attachments in equity. In *Pope* v. *Insurance Co.* 24 Ohio St. it was held :

"Jurisdiction of a defendant can not be acquired by proceedings in attachment, on the ground of his non-residence in the State, when the petition in the case, and the affidavit for attachment, fail to show that the cause of action, is one arising upon contract, judgment, or decrees, jurisdiction can not be acquired in such case by amendment of the petition and affidavit, showing a cause of action arising upon contract, without the issuance of attachment after the amendment."

But in our State and Virginia in foreign attachments in equity it is not the affidavit that gives the jurisdiction. *O'Brien* v. *Stephens*, 11 Grat. 610 was a foreign attachment in equity, and no affidavit was filed at all, and the defendants appeared and demurred to the bill. The court held, that the nature of the claims asserted, the non-residence of the defend-

ant, and the location of the property gave the court jurisdiction of the subject; the mode and measure of relief, must be governed by the general rules of chancery practice, as modified by the statute. The court further held, that after the defendants appeared, it was competent to render a personal decree against them as they might thereafter resort to an attachment against the property, as the statute authorizes such resort, after the suit is brought. The bill in *O'Brien* v. *Stephens, et al,* was filed under and governed by the Act of. 1852, which is the same as the provisions in the Code of 1860.

*Moore* v. *Holt,* 10 Grat. 284, was decided in 1853, and the cause arose under the Code of 1819. This was a foreign attachment in equity. Lee, Judge, who delivered the opinion of the court, said:

"This is a contest between persons claiming to be creditors of a common debtor and seeking priority out of the proceeds of his effects which have proved inadequate to the satisfaction of all. The suit of the appellee was what is called a 'foreign attachment' commenced by a subpœna sued out on October 12, 1846 with the usual endorsements to attach the effects of the absent debtor in the hands of the home defendants and to restrain the latter from disposing of them until the further order of the court. It was made returnable to the November rules following, and upon the day upon which it issued, it was executed on the defendant Snodgrass who had in his possession a stock of goods and other effects belonging to the debtor, Joseph W. Holt. After the service of this process, that is to say, on and after October 17, 1846, the appellants and other creditors of the said Joseph Holt sued out their second attachments at law, and the same were levied on the same property. * * It is objected on the part of the appellants that the appellee's attachment was issued irregularly and was void, because no such affidavit of the non-residence of the debtor, as is required by the statute, had been made and filed before the *subpœna* with the endorsements of attachment issued. It has never been the practice, so far as I have been able to learn, to file an affidavit of non-residence with the clerk in order to authorize him to issue the *subpœna* and to make such endorsment in the nature of an attachment therein, as the plaintiff's counsel may direct.

According to the long established usage of the State such an endorsement without a previous affidavit serves as a notice to the home-defendant not to part with the effects of the debtor in his hands without leave of the court, and when served upon the home-defendant creates a lien in favor of the creditor, of which neither the absent debtor, nor the garnishee by any act of theirs, nor any third person by any attachment or other process of law subsequently levied could deprive him.    This practice has been repeatedly recognized as regular both by the chancery courts and the court of appeals. (*Smith* v. *Jenny*, 4 Hen. & Munf. 440; *McKinn* v. *Fulton*, 6 Call. 106; *Williamson* v. *Bowie*, 6 Munf. 176; *Erskine* v. *Staley*, 12 Leigh. 406.)

"An endorsement, in the nature of an attachment, has not, it is true, been construed to authorize the officer serving it to take the effects out of the hands of the garnishee, or to require him to give security to have them forthcoming; nor does it operate as an injunction, so as to subject a party to the penalty of a contempt for disobedience.   If the plaintiff desires such a formal order of the court, as will serve these purposes, he must file the affidavit according to the terms of the act; but for the purpose of a notice to the garnishee, and to secure a lien upon the property, a *subpœna* with an endorsement in the nature of an attachment, comes in place of the formal order of the court, and had indeed superseded it in practice and rendered it unnecessary as early as *Smith* v. *Jenny*, decided in 1809.   The act certainly does not require the affidavit to be filed before the *subpœna* can issue; and I am aware of no case, from which any inference can be fairly made to refuse it.   The case of *Brown* v. *Pitman*, 12 Leigh 379, referred to by the counsel does not so decide.   The court in that case held, that it was error in the court below to proceed to decree against absentees without an affiavit of non-residence or that upon inquiring at their usual places of abode they could not be found.   Nothing is intimated of any necessity to file this affidavit before the *subpœna* issues; and it is expressly held, that the answer of a defendant admitting that he was a non-resident would render any affidavit unnecessary.

"The next objection is that the attachment was void for uncertainty, because neither the character nor amount of the

claim, for which the attachment is sued out, is stated in the endorsement on the *subpœna*. The endorsement however is of course to be understood as referring to the bill to be filed, in which the nature and amount of the complainant's demands must be properly exhibted."

The affidavit, of which Judge Lee was speaking, is found in sec. 1, chap. 123 of Code of 1819, which provided : " If in any suit, which hath been or hereafter shall be commenced, for relief in equity in any superior court in chancery or in any other court against any defendant or defendants, who are out of this county, and others with the same having in their hands effects of or otherwise indebted to such absent defendant or defendants, or against any such absent defendant or defendants having land or tenements within the Commonwealth, and the appearance of such absent defendants be not entered, and security given to the satisfaction of the court for performing the decrees, *upon* affidavit that such defendant or defendants were out of the county, or that upon enquiring at his, or her, or their, usual place of abode, he, she or they could not be found, so as to be served with process ; in all such cases, such court may make an order, and require surety, if it shall appear necessary, to restrain the defendants in this country, from passing, conveying away, or secreting the debts, by them owing to, or the effects in their hands, of such absent defendant, or defendants, &c."

In *Cirode* v. *Buchanan, adm'r*, 22 Grat. 205 it appeared, that in February, 1867, B. administrator, *de bonis non* of J. filed his bill, in which he sets out a money decree of an Alabama court against S ; that S. is a non-resident of the State ; that he owns land here which he describes and asked that it may be sold for the payment of his debt ; but he did not pray for an attachment, nor was an attachment sued out, nor an endorsement on the process of the object of the suit. In May 1867 there was an affidavit that S. is not an inhabitant of the State, and an order of publication setting out the object of the suit. In July 1868 S. was declared a bankrupt in Tennessee, and his assignee C. makes himself a party to the suit, and claims the bond or its proceeds, it having been sold. It was held, first: The bill stating a good cause for an attachment-suit, the affidavit required by the statute may be made

at any time, before another person obtains a right, and the endorsement on the *subpœna* is not necessary to render his attachment valid. Second: If an endorsement were necessary, the order of publication was in the nature of process, and B. is entitled to the proceeds of the property as against C. the assignee in bankruptcy. Moncure, President, who in 1872 announced the unanimous opinion of the court, said:

"This is an appeal from a decree of the circuit court of Smyth county and involves a question of priority between a foreign attachment creditor and an assignee in bankruptcy of a common debtor in regard to certain real estate of the debtor lying in said county. The question depends on the priority of time when the respective liens or claims of the conflicting claimants attached to the subject. The attachment-creditor claims a lien from the time of filing his bill, to-wit: the 20th day of February, 1867, the assignee in bankruptcy claims a lien from the time of the filing the petition in bankruptcy, to-wit: the 2d day of March, 1868, or at least from the time of the adjudication of bankruptcy to-wit: the 28th of March, 1868. If the claim of the person is well founded it is of course paramount to that of the latter. *Prior in tempore est prior in jure.* The assignee takes the estate of the bankrupt just as the bankrupt held it, subject to all liens and equities when good against the bankrupt at the time he became such. * * There is no contest in this case as to the fact, that the common debtor filed his petition in bankruptcy on the 2d day of March, 1868, and was adjudged a bankrupt on the 28th day of March 1868, nor does it appear that there is any contest as to the fact that the debt claimed by the attaching creditor was due by the common debtor at the time of the institution of the suit and still remains unpaid. Nor as to the facts that the debtor at that time was a non-resident of the State of Virginia, that he owned the real estate on which the attachment lien is claimed, that the said real estate is situated in the said county of Smyth in this State, and that these facts were all averred in the bill, which was filed in this suit on February 20, 1867. All these facts are fully sustained by the pleadings and proofs in the cause. The foreign attachment-creditor had undoubtedly a good cause for a foreign attachment

in chancery at the time of the filing of his bill, and the controversy in this cause seems to be narrowed down to this: Whether he so prepared his bill, and so proceeded upon it, as to make him a foreign attachment-creditor, and give him the benefit of a foreign attachment-lein from the time of the filing of his bill? He had a good cause for a foreign attachment suit in chancery. Has he sufficiently stated it in his bill? And has he done what was necessary to give effect to his attachment lien? If he has not he has certainly been very unfortunate."

The judge then reviews the allegation of the bill, and reaches the conclusion, that although the suit therein is not called an attachment suit, and the bill does not in terms pray that the land may be attached for the payment of the claim, yet the bill contains all the necessary and proper allegations for such a suit, and prays for suitable specific as well as for general relief, which he holds is sufficient in substance, unless the complainant has omitted something in the proceedings in the suit, which the statute requires, to give it affect as an attachment suit, in other words to give it affect as an attachment lien upon the land against the claim of the assignee in bankruptcy arising subsequently thereto. "Has there been any such omissions then?" is the question. If there has, it consists in the omissions of such an affidavit, as the statute requires to be made in such cases, or in the omission of the endorsement on the subpœna describing the real estate intended to be attached. He then discusses the affidavit required by the Code of 1819, and that required by the Code of 1849, and the amendment of 1852, under which the case he was considering arose. Speaking of the affidavit of non-residence filed in the suit, he says:

"This affidavit would have been a full compliance with the requisition of that act, (1819). But the Code of 1849, ch. 151, made a material change of the attachment law; and sec. 11, which relates to attachments in equity, provides that 'there may be an affidavit according to the nature of the case conforming, as near as its nature will admit, to what is specified in previous sections.' Sec. 1 of the same is the section here chiefly referred to, and provides that 'when any suit is instituted for any debt, or for damages for breach of any

contract an affidavit stating the amount and justice of the claim that there is just cause of action therefor, that the defendants or one of the defendants, is not a resident of this State, and that affiant believes he has estate or debts due him in the county or corporation, in which the suit is, or that he is sued with a defendant residing therein, the plaintiff may forthwith sue out of the clerk's office an attachment against the estate of the non-resident defendant for the amount so stated.' An affidavit, which corresponds substantially with that described in sec. 1, seems to be such an one as is contemplated by sec. 11, and is more comprehensive than the affidavit required by the Act of 1819, which was only as to the non-residence of the debtor, or that upon inquiry at his usual place of abode, he could not be found so as to be served with process. But in construing the attachment-law of 1849, we must bear in mind one of the chief purposes, which the Legislature had in view, to-wit: to provide a substitute for the right, which previously existed, to hold a defendant to bail, and we must look at the whole act together. The plan of the Legislature was to apply a legal remedy to legal demands; and equitable remedies to equitable demands; so as to give a remedy by attachment in equity only in those cases, where the demand was equitable, and where, if all the defendants resided in the State, the suit would have to be brought in equity. According to this plan, the attachment was a mere collateral proceeding, incident to the main action or suit, which was the same in form, as if no attachment was incident to or connected with it. It did not appear from the pleadings in the action or suit that any of the defendants were non-residents, or whether they had any, or if any, what estate within the jurisdiction of the court. These pleadings merely showed that the plaintiff had a good cause of action or suit, supposing all the defendants to be residents of the State. Therefore it was fit and proper, when the plaintiff wished to have the benefit of the attachment to secure the amount of what he might recover in the action or suit, that he should be required as a foundation of the attachment to make such an affidavit as was required by the Code of 1849. The law had previously been different. The only remedy, which then existed against a non-resident debtor

owning estate in this Commonwealth, was a foreign attach-
ment in chancery, whether the debt was a legal or equitable
debt.   When the debt was a legal debt, it was necessary to
aver in the bill, that the debtor was a non-resident of the
State and owned estate within the same, otherwise the bill
would have been demurrable.   Where the debt was an equi-
table debt, no such averment in the bill was necessary.   In
1852 the Code of 1849 was amended so as to add these words
at the commencement of sec. 11 of ch. 151 aforesaid, to-wit:
"A claim to any debt, or to damage for breach of any con-
tract against a person who is not a resident of this State, but
who has real estate or debts due him within the same, may,
if such claim exceed $20.00, exclusive of interest, be main-
tained in any court of equity for a county or corporation, in
which there may be.any such estate, or a defendant owing
any debt to such non-resident."   The effect of this amend-
ment was to give to a creditor having a legal claim against a
debtor residing out of the State, and owning effects or estate
therein the same right to bring a foreign attachment-suit in
equity, as he would have had before the Code of 1849, the
only difference being, that since the amendment he has had
an election to sue at law or in equity in such a case, where
before the Code of 1849, he could sue in equity only.   But
no change was made in sec. 11 as to the affidavit to be given
in a foreign atttachment in equity for a legal demand.   In
such a suit brought under that section, amended as aforesaid,
it is necessary to aver in the bill, that the debtor resided out
of the State and has estate or effects therein, as it would
have been necessary to make such an averment before the
Code of 1849, otherwise the bill would be demurrable.

    The grounds for equitable relief in such a case are there
filed:   First, that a debt is due to the plaintiff; second, that
the debtor is a non-resident of the State ; and third, that he
has estate or effects within the State.   These three grounds
make up a good case in equity; and if they are proved, the
plaintiff will be entitled to a decree on the hearing for the
amount of the debt and for the application of the said estate
and effects, as far as may be necessary, to the payment there-
of.   Certainly there can be no decree against an absent de-
fendant without an answer, appearance or publication ; and

there can be no publication without an affidavit of non-residence, and such an affidavit is therefore necessary where there is no answer or appearance of the non-resident debtor; but if the case be regularly matured for hearing and be fully proved, the plaintiff is entitled to a decree accordingly, except, against parties or persons, who may be injured by his non-compliance with some preliminary requirements of the statute. He is certainly entitled to such a decree against the debtor himself and against all who stand in his shoes. But even if any other affidavit than that of non-residence of the debtor were necessary in this case, it is well settled that the affidavit required by the statute to authorize the suing out of an attachment against the estate or effects of an absent debtor may be made either before or after the bill is filed. (*O'Brien* v. *Stephens*, 11 Grat. 610; *Moore* v. *Holt*, 10 Grat. 284.) Indeed it is expressly declared by the statute in the very section, which gives the remedy in this case, to-wit, sec. 11 aforesaid, that such affidavit may be filed at the time of or *after* the institution of the suit." The decree appealed from is interlocutory. What is there to prevent the affidavit from being now made, if any other affidavit be necessary, than that which has already been made ?"

*Fisher* v. *March*, 26 Grat. 766, was a foreign attachment in equity. The suit was instituted in January, 1871. The first affidavit made by the agent of plaintiff's when the attachment was sued out was insufficient, and another affidavit was made by the same agent on April 7, 1871. The bill set out everything necessary to show a case for foreign attachment, and the second affidavit is to the truth of the matters set forth in the bill, and that affiant believes the debt set forth in the bill describing it is justly due from defendant to complainants and at the time of the institution of this suit they were entitled to recover the same, and have present cause of action therefor, and that defendant was a non-resident of the State. It does not appear, that after the second affidavit was made, there was any new *subpœna* issued or any further endorsement made therein. Moncure, President, speaking for the whole court said of the second affidavit:

"In regard to the affidavit to the bill if it be not now too late to object to it, we think it is substantially sufficient if it

is not in strict and literal compliance with the law. We speak especially in reference to the second affidavit which was made on April 9, 1871. It is no valid ground of objection to that affidavit that it was made after the instituting of the suit, nor that it was made by the agent of the plaintiffs instead of the plaintiffs' themselves. The affidavit states that 'the matters and things set forth in the bill are true,' and thus adopts it as a part of the affidavit."

The proceedings in this cause were much more regular than in *Moore* v. *Holt*, and *Cirode* v. *Buchanan*, and so far as the affidavit is concerned, very similar to the proceedings in *Fisher* v. *March*, and unless we are prepared to depart from the principles announced in the Virginia decisions, we can not hold the attachment in this cause to be no lien, because the second affidavit, confessedly good was made after the endorsement on the subpœna. In *Moore* v. *Holt*, the lien was held good, though the affidavit of non-residence was made long after the endorsement. That was the affidavit required under the Act of 1819, (and it was just as essential, that it should be made as an affidavit under the Code of 1860 as amended in 1867) *stating the nature of the claim, &c.* Yet the lien in that case was held to be prior to that of other creditors. *Cirode* v. *Buchanan* goes much further to sustain the lien in that case, than is necessary to sustain the lein in this cause. We do not wish to be considered as approving all that is decided in that case, nor are we at this time prepared to disapprove it. It is not necessary to express an opinion, whether that case propounds the law correctly or not. But we are prepared to say that in Virginia, the same strictness in the proceedings was never regarded in foreign attachments in equity as in attachments at law. Nor do we think that the statute requires the same strictness. It is a chancery proceeding against a non-resident, to subject his land to the payment of a debt. The bill gives him notice of everything necessary to show the debt, its nature and the proceeding against his land in the county, where the suit is instituted for the payment of the debt. If he appears, a personal decree can be rendered against him. If he does not appear, and an order of publication has been executed against him, the property will be sold to pay the debt.

In this cause seven years before the defendant, the Pittsburg, Cincinnati and St. Louis Railway Company, had any interest in the subject, the second affidavit which is in strict compliance with the statute, was filed, we think, according to all the Virginia authorities, that the plaintiff's lein was perfect at least from the time the second affidavit was filed. In domestic attachments at law, we have applied the strictest rule. (*Delaplain* v. *Armstrong*, 21 W. Va. 211; *Hudkins* v. *Haskins*, 22 W. Va. 643; *Capehart* v. *Dowery*, 10 W. Va. 135; *Hale* v. *Donahoe*, 25 W. Va. 414.) We do not desire to relax the rule in such cases. The attachment proceeding, is all the notice, that the defendant has in such cases. The affidavit lies at the very foundation. In chancery the proceedings were according to the rules of that court. The case for an attachment is fully set out in the bill. The court did not err in refusing upon the motion of the defendants, the Pittsburg and Steubenville Railroad Company, and the Pittsburg, Cincinnati and St. Louis Railway Company to quash the attachment because the affidavit was defective.

But it is further insisted, that there is no sufficient description of the land in the endorsement on the subpœna. It is described as a strip 100 feet wide in Hancock county, near Harmon's creek, on which there is a railroad bed and railroad track. We think that description sufficient; but it is clearly described in the bill and that must be looked to if necessary. This Court has held, that in such a case it was not material, that the order of attachment endorsed on the summons by the clerk should specify the property of the debtor mentioned in the affidavit, on which the order of attachment was issued. (*King* v. *Board*, 7 W. Va. 701.) Haymond, President, said: "It is proper that the bill should show that the debtor had estate or debts due him in the county where the proceeding or suit is had. But it is not essential to the validity of the attaching order and the levy thereof, that the property mentioned in the affidavit is not mentioned in the order in a proceeding of the character of this. This is not a suit in equity for the recovery of specific property from the defendant, Abraham Board, but as before stated, it is for the recovery of a debt from the absent debtor, by subjecting his estate, by order of attachment in the cause, to the payment thereof. Where the

suit is for the recovery of specific property, it is then perhaps material that the specific property, sought to be recovered should be material both in the affidavit and order. The attaching order in this case was levied on the real property of the absent debtor, mentioned in the affidavit, situated in Jackson county. Proceedings in cases. of this kind under said eleventh section are the same as in other suits in chancery. The description in the levy together with that in the bill is entirely sufficient."

It is also assigned as error, that the decree directed a sale of a substantial and necessary part of the through line of railroad operated by the P. C. & St. L. R'y Co. The attachment was on no railroad in West Virginia. It was on a strip of land. We are now informed that the defendant-company has some chartered rights in West Virginia, and can under our laws exercise the franchise of a railroad company in this State. But the debtor company never had such rights in this State, and if *pendente lite* the P. C. & St. L. R'y Co. has acquired any interest in the attached subject, that company took it *cum onere*. It is no railroad that is attached, nothing but real estate, and as such it must be sold. (18 W. Va. 184.) This also disposes of the seventh assignment of error, that the decree directed the sale of the portions of land in Brooke and Hancock counties separately.

It is insisted, that the court erred in entering a separate decree in suit No. 3, instead of in the three suits consolidated. The suits were consolidated prior to the decree of February 22, 1877, which was rendered against the defendant, the Pittsburg and Steubenville Railroad Company, for the amount of the indebtedness, and an order of sale of the attached property in suits Nos. 1 and 2, and suit No. 3 was remanded to rules, to bring the legal title before the court, in order that the property attached in that suit might be sold. This had the effect to disunite the suits so far as the attachments were concerned, and they were ended as to all other matters. The entering of a separate decree in suit No. 3, did not prejudice the said defendant, the P. C. & St. L. R'y Co.

It is also assigned as error, that the court directed a sale of the land attached as being situated in Hancock county without having ascertained what land was levied on, it appearing

that there was but one strip of land running from the Ohio river to the Pennsylvania line, the whole of which had been returned as situated in Hancock county, and also in Brooke county. I do not so understand the levy in the respective suits or the description in the bills, but if it were so, it does not prejudice the defendant, as the sheriff of Hancock county will only sell so much of the said strip, as lies in Hancock county.

It is also insisted, that the court erred in failing to have the amounts and priorities of the first and second mortgage liens ascertained and fixed. We have already ascertained that neither of said mortgages constituted any lien on said attached property.

It is asigned as error, that the rights of the Western Transportation Company as lessees of the Pittsburg and Steubenville Railroad Company were not enquired into. We held in the former appeal, that said company being a lessee was not a necessary party to the suit. The decree is affirmed.

AFFIRMED.